**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5479

HAKEEM SHONEKAN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-94-337-MJG)

Submitted: April 15, 1996

Decided: April 29, 1996

Before ERVIN and MOTZ, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William B. Purpura, Baltimore, Maryland, for Appellant. Maury S.
Epner, OFFICE OF THE UNITED STATES ATTORNEY, Green-
belt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Hakeem Shonekan pled guilty to attempted possession of 2.8 kilograms of heroin with intent to distribute, 21 U.S.C.A. § 846 (West Supp. 1995). He received a sentence of 87 months imprisonment. His attorney has filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), asserting that the district court may have abused its discretion in failing to depart under USSG § 5K2.0[1] and clearly erred in refusing Shonekan a minor role adjustment, USSG§ 3B1.2(b), but concluding that these issues are without merit. Shonekan has filed a pro se supplemental brief addressing the same issues. We affirm.

Shonekan stipulated that he flew from Nigeria to Dallas, Texas, with two suitcases, each of which had a secret compartment containing heroin. When he learned in Dallas that the suitcases had been misrouted, Shonekan's behavior aroused the suspicion of the United States Customs Inspector who dealt with him. Shonekan flew on to Maryland, and the suitcases were searched when they arrived in Dallas two days later. The heroin was discovered, most of it was removed, and electronic transponders were placed in the secret compartments. A Customs agent then accompanied the suitcases to Dulles Airport, outside Washington, D.C. Shonekan came to the airport with his father several times but failed to retrieve the luggage because he came at the wrong hours. The suitcases were then delivered to Shonekan's home by an undercover agent. Shonekan's wife put the suitcases in the car and drove to a gas station where Shonekan was waiting. After the couple looked around, Shonekan took the wheel and drove away at high speed, ignoring stop signs and driving the wrong way on a one-way street. His attempt to evade the agents who were following him succeeded. Shonekan and his father subsequently opened the suitcases in a motel room and abandoned them there. Shonekan was arrested a month later in New York.

At his sentencing, Shonekan claimed that he had been used as a courier by his father and stepmother. He conceded that, at least by the

_____

[1] United States Sentencing Commission, Guidelines Manual (Nov. 1994).

2

time he received the suitcases in Maryland, he knew the suitcases contained drugs. However, he requested a minor role adjustment because he allegedly did not know the amount of heroin and did not stand to profit from its sale. A minor participant is one who is less culpable than most other participants in the offense. USSG § 3B1.2, comment. (n.3). The district court found that, based on his stipulated conduct, Shonekan was not a minor participant. We find that the district court's determination was not clearly erroneous.

Shonekan was sentenced below the mandatory minimum of ten years under USSG § 5C1.2, the safety valve guideline. He also sought to benefit from a proposed amendment to USSG § 2D1.1**2** by requesting a two-level departure under USSG § 5K2.0. The district court declined to depart, finding that the guidelines in effect on the date of sentencing should be applied, and also refused to continue sentencing until November 1995. Because the district court based its decision not to depart on a perceived lack of legal authority to do so, we review the decision de novo. United States v. Hall, 977 F.2d 861, 863 (4th Cir. 1992). The district court correctly determined that it could not depart in anticipation of a proposed amendment to the guidelines. 18 U.S.C.A. § 3553(a)(4) (West Supp. 1995) (defendant's sentence should be based on guidelines in effect on date of sentencing). Amendments which are intended to be applied retroactively are listed in USSG § 1B1.10. Amendment 151, the amendment in question, is not listed there. Thus, Shonekan did not identify a factor which the Sentencing Commission failed to consider.

We therefore affirm the sentence imposed by the district court. In accordance with Anders, we have examined the entire record in this case and find no meritorious issues for appeal. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave

---

**2** Effective November 1, 1995, a defendant who qualifies for sentencing under USSG § 5C1.2 and has an offense level of 26 or more, may have his offense level decreased by 2 levels under USSG§ 2D1.1(b)(4). See USSG App. C, amendment 515. Shonekan was sentenced in June 1995.

3

to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client.

We dispense with oral argument because the facts and legal contentions are adequately presented in the record and briefs, and oral argument would not aid the decisional process.

AFFIRMED

4